Revised May 12, 1999

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-10552

_____

ATCHISON, TOPEKA AND SANTA FE RAILWAY CO.,
                              Plaintiff/Counterdefendant/Appellant,

    versus

UNITED TRANSPORTATION UNION (CT&Y),
                              Defendant/Counterclaimant/Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

May 10, 1999

Before KING, Chief Judge, and POLITZ and BENAVIDES, Circuit
Judges.

BENAVIDES, Circuit Judge:

    Atchison, Topeka and Santa Fe Railway Co. ("Santa Fe")
appeals the district court's determination that it lacked any
ground to overturn a public law board's award under the Railway
Labor Act ("RLA"). We find that the district court properly
granted summary judgment to appellee United Transportation Union
(CT&Y) ("UTU") and affirm.

    Under Federal Railroad Administration ("FRA") guidelines,
railroad yardman is a safety-sensitive position. FRA regulations

mandate that railroads conduct random drug testing of employees in safety-sensitive positions. *See* 49 C.F.R. § 219.601. In a random drug test in November 1993, James E. Richardson, a yardman with Santa Fe, tested positive for cocaine. Richardson had tested positive for cocaine in 1989 and positive for cocaine and marijuana in 1988. Santa Fe suspended Richardson pending an investigation. In accordance with the collective bargaining agreement in effect between it and the UTU, Santa Fe scheduled a formal hearing, which took place in January 1994. At that hearing, Richardson denied using cocaine and produced a list of prescription and over-the-counter medications he was taking. Three weeks later, Santa Fe fired Richardson pursuant to section 9.0 of its Policy on the Use of Alcohol and Drugs, which provides for firing employees who test positive for controlled substances twice within ten years.[1]

Both federal regulations, *see* 49 C.F.R. § 40.33; 49 C.F.R. § 219.707, and Santa Fe's internal policies[2] direct the

---

1.  The record does not make apparent any specific reason why Santa Fe did not attempt to fire Richardson after his second positive test. Santa Fe does not appear to have held a hearing following the second positive test, as the collective bargaining agreement requires before Santa Fe fires an employee.

2.  The form that Richardson had signed at the time of testing regarding his urine sample stated:
    Should the results of the lab test for the specimen identified by this form be confirmed positive, the Medical Review Officer will contact you to ask about prescription and over-the-counter medications you may have taken. Therefore, you may want to make a list of

-2-

railroad's medical review officer ("MRO") to evaluate information that casts doubt on a positive drug test. Santa Fe's MRO telephoned Richardson in November 1993 to tell him that he tested positive for cocaine. The MRO does not appear to have inquired at any time about other drugs Richardson might be taking, and Richardson did not at any time before the January 1994 hearing advise Santa Fe that he was using prescription or over-the-counter drugs. The MRO did not attend Richardson's hearing.

The UTU appealed Richardson's dismissal within Santa Fe. The company issued its final denial in April 1995. The UTU forwarded the matter to Public Law Board 4901 ("PLB" or "Board") for resolution.[3] The PLB conducted a hearing and issued a decision in August 1996 reinstating Richardson with back pay and benefits. The Board found that the MRO had not investigated the effect that Richardson's medications might have had on a drug test result and thus that the November 1993 positive test result was not a valid ground for firing Richardson.

---

those medications as a reminder. This list is not necessary. If you choose to make a list, do so either on a separate piece of paper or on the back of your copy . . . of this form. Do not list on the back of any other copy of this form. Take your copy with you.

Richardson testified at his disciplinary hearing that he was not otherwise asked about his use of medications until the hearing.

3. Pursuant to § 3 of the RLA, 45 U.S.C. § 153, arbitration of minor labor disputes before the National Railroad Adjustment Board is mandatory. Proceedings before a public law board, or adjustment board, created by agreement between employer and union, may substitute for NRAB arbitration.

Santa Fe sought review of the PLB award before the district court. "Under the Railway Labor Act . . . the range of judicial review in enforcement cases is among the narrowest known to the law." *Diamond v. Terminal Railway Alabama State Docks*, 421 F.2d 228, 233 (5th Cir. 1970). National policy favors the final settlement of labor disputes by arbitration. *See, e.g.*, *Air Line Pilots Association, International v. Eastern Air Lines, Inc.*, 632 F.2d 1321, 1323 (5th Cir. 1980). "The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 596, 80 S. Ct. 1358, 1360 (1960). In keeping with federal policy favoring the enforcement of arbitration awards, the RLA provides that a reviewing court may set aside an adjustment board's award only in one of three circumstances: (1) if the board failed to comply with the RLA; (2) if the board failed to confine itself to matters within its jurisdiction; or (3) if fraud or corruption tainted the process. *See* 45 U.S.C. § 153 First (q); *Union Pacific Railroad Co. v. Sheehan*, 439 U.S. 89, 93, 99 S. Ct. 399, 402 (1978) (per curiam). This Court has recognized a fourth basis for setting aside an award, in cases where the award failed to meet the requirements of due process. *See, e.g.*, *Brotherhood of Locomotive Engineers v. St. Louis Southwestern Railway Co.*, 757 F.2d 656, 660-61 (5th Cir. 1985). Santa Fe urged the district

court to adopt a fifth ground for denying enforcement of an arbitration award under the RLA, namely, in cases where the award contravenes public policy. The district court rejected Santa Fe's argument for a fifth ground and, finding that none of the four recognized grounds for setting aside the award applied, granted the UTU's motion for summary judgment.

Santa Fe makes two arguments to this Court as to why the arbitration award should be set aside. First, Santa Fe argues that the PLB exceeded its jurisdiction when it reinstated Richardson. According to Santa Fe, the record before the Board contained no evidence that Richardson was taking the medications at the time of the drug test (instead of merely at the time of the hearing) and no evidence that the medications could have caused a false positive test result. Furthermore, according to Santa Fe, the Board improperly relied on Richardson's statement that he was taking medications, because the statement was not made until two months after the drug test at the hearing. This argument is without merit. The Board's finding was that Santa Fe failed to have its MRO investigate Richardson's medications. Because of that failure, the Board held, the positive test result could not be considered valid. The Board's factually based findings in this regard are conclusive. *See Eastern Air Lines*, 632 F.2d at 1323. Without a valid positive test result, Santa Fe had no grounds under the collective bargaining agreement for

dismissing Richardson, and the PLB was within its jurisdiction in reinstating him.

Second, Santa Fe urges this Court to follow several other circuits and hold that a court may overturn an RLA arbitration award if the award contravenes public policy. *See, e.g.*, *Union Pacific Railroad Co. v. United Transport Union* ("*Madison*"), 3 F.3d 255, 261 (8th Cir. 1993) (specifically holding that precedent concerning public policy review under the National Labor Relations Act applies as well to the RLA); *Delta Air Lines, Inc. v. Air Line Pilots Association, International*, 861 F.2d 665, 669-71 (11th Cir. 1988) (assuming without discussion that public policy review is available under the RLA as well as under the NLRA); *Northwest Airlines, Inc. v. Air Line Pilots Association, International*, 808 F.2d 76, 83-84 (D.C. Cir. 1987) (same). We need not reach this issue. Even if Santa Fe is correct that there is a well-defined public policy against reinstating a drug user to a safety-sensitive position in the railroad industry, the PLB's decision in this case would not violate that policy. Because the Board found the test invalid, it did not assume that Richardson in fact used cocaine. This is not a case in which a PLB, after finding or not questioning that an employee used drugs or alcohol in violation of company policy, nonetheless ordered the employee reinstated to a safety-sensitive position, as might require us to consider public policy review. *Cf. Madison*, 3 F.3d

at 262-63 (refusing on public policy grounds to enforce an award reinstating a safety-sensitive employee whose due process rights were violated at his hearing but who nonetheless was found to have violated his company's alcohol regulation)[4]; *Delta Air Lines*, 861 F.2d at 668, 674 (refusing on public policy grounds to enforce an award reinstating an airline pilot where the adjustment board found that the pilot in fact had flown a plane while drunk).

Regardless of whether we agree with the PLB's award, we have no basis under law upon which to overturn it. We therefore must AFFIRM the district court's grant of summary judgment to the UTU.

---

4. In *Madison*, the company hearing officer made improper remarks on the hearing record--stating that the employee "reek[ed] of alcohol"--before the company determined that the employee had violated an industry-wide rule prohibiting the use of drugs or alcohol on the job. A public law board reinstated the employee without considering whether he had in fact violated the regulation. *See Madison*, 3 F.3d at 257. The Eighth Circuit found the board's award contrary to public policy because the board had failed to determine the employee's likelihood of future alcohol violations. *See id.* at 262. *Madison* may be distinguished from the instant case insofar as nothing in *Madison* suggested that the testing procedures used by the company might be invalid, only that the hearing officer made prejudicial remarks. Although the *Madison* court stated that it did not decide the case on the assumption that the drug test results were positive, *see id.* at 257 n.3, it acknowledged, "If the Board had reinstated [the employee] after finding that the allegedly positive test results were invalid due to faulty testing procedures or some other reason, we would be obliged to enforce the award." *Id.* at 262.