# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 31, 2012

No. 11-20279
Summary Calendar

Lyle W. Cayce
Clerk

EDWARD S. BALLEW; TIMOTHY J. SHANNON; CRAIG P. BOWCOCK; WILLIAM BAUER,

Plaintiffs - Appellants

v.

CONTINENTAL AIRLINES, INCORPORATED; CONTINENTAL PILOTS RETIREMENT PLAN,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before GARZA, SOUTHWICK, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

This appeal arises from the district court's order dismissing Plaintiffs-Appellants' ("Retirees") claim for lack of subject matter jurisdiction due to the Railway Labor Act's ("RLA") exclusive and mandatory dispute resolution process that applies to Retirees' claims. Retirees argue on appeal that the RLA does not apply to them because they are no longer "employees" as contemplated by the RLA, 45 U.S.C. §§ 151, 181. Alternatively, Retirees argue that even if the RLA applies to them as former employees, they complied with the terms of their Collective Bargaining Agreement ("CBA"), which allowed them to bring an action in federal district court pursuant to Section 502(a)(1)(B) of the Employee

No. 11-20279

Retirement Income Security Act ("ERISA").  For the reasons set forth below, we AFFIRM.

## I.  Facts & Procedural History

Retirees are all former Continental Airlines pilots who filed a proposed class action against Continental Airlines, Inc. and the Continental Pilots Retirement Plan ("Continental") in the United States District Court for the Southern District of Texas in May 2010.  Retirees sued under ERISA § 502(a)(1)(B), alleging Continental breached the terms of Retirees' pension plan.  On March 21, 2011, the district court dismissed Retirees' claims for lack of jurisdiction, holding that the RLA applied to Retirees and that the RLA gives exclusive jurisdiction over their contract interpretation claim to the administrative resolution process.  Retirees timely appealed the district court's order on April 18, 2011.

In their complaint, Retirees allege that Continental misinterpreted the terms of their pension benefits as memorialized in the Retirement Plan—a pension plan generally subject to ERISA.  Specifically, Retirees contend that the pilots' retirement pensions should be calculated according to the most recent sixty consecutive months' salaries before leaving Continental.  Retirees argue that Continental inappropriately considered any utilized "sick leave" as an interruption of a pilot's consecutive sixty months and thus calculated the continuous sixty month period from an earlier period in the pilot's career.  Retirees aver that this computation method accounts for lower pension calculations because pilots earn less earlier in their careers.

The CBA provided that employees like Retirees must seek review of adverse benefit determinations through the Retirement Board, a properly established "System Board" under the RLA,  45 U.S.C. § 184. The Retirement Board is composed of four people, two appointed by Continental and two

No. 11-20279

appointed by the Air Line Pilots Association ("ALPA").[1]   Section 21 of the CBA outlines the jurisdiction of the Board, vesting it with the authority to hear grievances stemming from the "interpretation or application of any of the terms of the Agreement."   The CBA specifically exempts "changes in hours of employment, rates of compensation, or working conditions covered by existing agreements between the parties," from the Board's jurisdiction.   Moreover, section 21 dictates that "all cases properly referred to [the Board] will be final and binding upon the parties."  If the Board deadlocks on a particular dispute, parties are allowed to seek further arbitration, so long as the claimants waive their right to further litigation and the arbitrator is selected from a mutually agreed list of ERISA arbitrators.   If the Board does not deadlock the CBA contemplates employees' ability to sue under ERISA.

Section 28 of the CBA expressly incorporates Continental's retirement plans into the CBA—including the Retirement Plan at issue here.   Section 9.21(c) of the Retirement Plan provides standard notification procedures for a claimant's adverse benefit determination by a Benefits Administrator.   That provision requires the Administrator to "includ[e] a statement of the Claimant's right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review."   Section 9.21(d) of the Retirement Plan provides that a Plan participant has a right to have an adverse benefit determination reviewed by the Retirement Board.   That section also provides a claimant with "the opportunity to submit written comments, documents, records, and other information relating to the claim for Plan benefits to the Retirement Board" and establishes that a "decision on review by the Retirement Board will

---

[1] The Retirement Board is composed of representatives selected by both the employees' union and the employer and is in place to resolve disputes under a CBA; by contrast, a Plan Administrator is generally selected by the employer and owes a fiduciary duty to Plan beneficiaries in administering the Plan, *see Izzarelli v. Rexene Prods. Co.*, 24 F.3d 1506, 1509 n.3 (5th Cir. 1994).

No. 11-20279

be binding and conclusive upon all persons and the Claimant shall neither be required nor permitted to pursue further appeals to the Retirement Board." The following section, 9.21(e), does, however, contemplate a claimant's "right to bring an action under section 502(a) of ERISA" following an adverse determination by the Retirement Board. Like the CBA, the Retirement Plan, section 9.21(f), allows a claimant to pursue binding arbitration before an ERISA arbitrator in the event of a Retirement Board deadlock.

Acting for Retirees, Captain Edward Ballew sought review of Continental's initial adverse benefit determination on August 6, 2009 and made oral arguments to the Retirement Board on August 10, 2009. The Retirement Board issued a unanimous decision rejecting Ballew's interpretation of the Plan in October 2009. In its decision, the Retirement Board provided that "Captain Ballew also has the right to bring suit under section 502(a) of ERISA." Retirees thus commenced this action in May 2010.

## II. Standard of Review

This Court has jurisdiction over the final judgment of the district court under 28 U.S.C. § 1291. We review a district court's dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) de novo. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *see also St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 538 (5th Cir. 2009) (stating that this Court reviews a district court's rulings on questions of statutory interpretation de novo). We may also affirm on any ground supported by the record, including one not reached by the district court. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).

The party asserting jurisdiction bears the burden of proof for a 12(b)(1) motion to dismiss. *Ramming*, 281 F.3d at 161 (citations omitted). The plaintiff must prove by a preponderance of the evidence that the court has jurisdiction based on the complaint and evidence. *Patterson v. Weinberger*, 644 F.2d 521, 523

No. 11-20279

(5th Cir. 1981). A court can find that subject matter jurisdiction is lacking based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming*, 281 F.3d at 161 (citing *Barrerra-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1992)).

## III.  Discussion

Retirees filed this action pursuant to ERISA § 502(a)(1)(B), alleging that Continental breached the CBA by failing to provide Retirees with pension benefits outlined in the Retirement Plan.  The issues presented by this appeal are (1) whether the RLA applies to Retirees as "employees" under the Act; and (2) whether, despite the RLA's exclusive arbitration procedures, Retirees may seek judicial review of adverse Retirement Board determinations.

### A.  Retirees as "Employees" under the RLA

First, Retirees contend that they are not covered by the RLA.  Citing the language governing the RLA, 45 U.S.C. §§ 151, 181, Retirees argue that their status as former employees exempts them from the RLA's mandates.  This argument has been squarely rejected by this court.  *See Bowcock v. Cont'l Airlines, Inc.*, No. 10-20856, 2011 WL 2672521 (5th Cir. July 8, 2011) (unpublished).[2]    In that case, one of the appellants here, Craig Bowcock, pursued similar litigation based on his allegation that Continental breached its fiduciary duty under ERISA by indicating that he would have to abandon his contemporaneous pension claims (the suit before us now) in order to take advantage of an early retirement program.  This Court affirmed the district court's dismissal of Bowcock's claims due to lack of subject matter jurisdiction. *Id.* at *3.  Bowcock argued, just as Retirees do here, that the RLA's mandatory

---

[2]  Although *Bowcock* is unpublished and, therefore, not precedential, it represents a reasoned opinion by our court on the same general facts presented in this case.  We therefore rely upon it as persuasive authority.

dispute resolution procedures were not applicable to him as a retiree because retirees are not "employees" under the RLA. *Id.* at *1. As noted in *Bowcock*, the Supreme Court decided this issue in *Pennsylvania Railroad Co. v. Day*, 360 U.S. 548 (1959). The *Day* Court considered whether the National Railroad Adjustment Board maintained exclusive jurisdiction over a former rail employee. *Id.* at 551. Holding that the RLA applied despite the claimant's status as a retiree, the Court stated that "[a]ll the considerations of legislative meaning and policy which have compelled the conclusion that an active employee must submit his claims to the Board, and may not resort to the courts in the first instance, are the same when the employee has retired and seeks compensation for work performed while he remained on active service." *Id.* at 552.

Despite *Day*'s clear pronouncement, Retirees invite us to ignore Supreme Court precedent because they believe the current Supreme Court would overrule *Day*. We are a "strict *stare decisis* court," *Bowcock*, at *3 (citing *FDIC v. Abraham*, 137 F.3d 264, 268 (5th Cir. 1998)), and are in no position to challenge the statutory construction utilized by the Supreme Court in *Day*. The Supreme Court has sole authority to overrule its own decisions, meaning that the courts of appeal must follow the Supreme Court's directly controlling precedent even if it "appears to rest on reasons rejected in some other line of decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989). Our sister circuits agree. *See, e.g.*, *Bloemer v. Nw. Airlines, Inc.*, 401 F.3d 935, 939 (8th Cir. 2005); *Leu v. Norfolk & W. Ry. Co.*, 820 F.2d 825, 831 n.10 (7th Cir. 1987); *Air Line Pilots Ass'n, Int'l v. Alaska Airlines, Inc.*, 735 F.2d 328, 328 (9th Cir. 1984); *see also Bowe v. Nw. Airlines, Inc.*, 974 F.2d 101, 103 (8th Cir. 1992) (finding that claimant's status as a former employee does not fall within the narrow exceptions to the RLA's exclusive jurisdiction). We thus follow the Supreme Court's precedent and leave to that Court the determination of whether *Day* survives another day.

No. 11-20279

*B. Judicial Review of a System Board Determination*

Next, Retirees argue that even if they are "employees" as contemplated by the RLA, they complied with the dispute resolution process governed by the CBA and are thus able to seek judicial review of the Retirement Board's October 2009 determination.

The RLA notably distinguishes between two types of disputes. "A major dispute concerns the formation of a CBA, which arises when a CBA is not in place or when a party seeks to change the terms of a CBA. A minor dispute concerns grievances or the interpretation or application of agreements covering rates of pay, rules, or working conditions." *Mitchell v. Cont'l Airlines, Inc.*, 481 F.3d 225, 230-31 (5th Cir. 2007) (citing *Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299, 302-03 (1989)); *see also* 45 U.S.C. § 184 (requiring air carriers and unions to establish arbitral boards for the resolution of "disputes between an employee or group of employees and a carrier or carriers by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions . . ."). At the crux of the issue here, the RLA requires minor disputes that cannot be settled through internal grievance procedures to be resolved through a mandatory, exclusive, and comprehensive resolution process before a claims adjustment board established by the employees' union and the employer through the CBA. *See, e.g.*, *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 248 (1994); *Bhd. of Locomotive Eng'rs v. Louisville & Nashville R.R. Co.*, 373 U.S. 33, 38 (1963).

"The distinguishing feature of [a minor dispute] is that the dispute may be conclusively resolved by interpreting the existing agreement." *Consol. Rail Corp.*, 491 U.S. at 305. Thus, "[w]here an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective-bargaining agreement." *Id.* at 307. "Congress considered it essential to keep these so-called 'minor'

7

disputes within the Adjustment Board and out of the courts." *Union-Pacific R.R. Co. v. Sheehan*, 439 U.S. 89, 94 (1978) (per curiam); *see generally Hawaiian Airlines,* 512 U.S. at 252 ("Congress' purpose in passing the RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." (citation omitted)). Furthermore, national policy favors the final settlement of labor disputes outside of the judicial process, *see, e.g.*, *Air Line Pilots Ass'n, Int'l v. E. Air Lines, Inc.*, 632 F.2d 1321, 1323 (5th Cir. 1980), and "[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards," *Atchison, Topeka & Santa Fe Ry. Co. v. United Transp. Union*, 175 F.3d 355, 357 (5th Cir. 1999) (quoting *United Steelworkers of Am. v. Enter. Wheel & Car. Corp.*, 363 U.S. 593, 596 (1960)).[3] That being said, "[t]he assertion of any right that is not created by a CBA is . . . not subject to binding arbitration under the statute." *CareFlite v. Office & Prof'l Emps. Int'l Union, AFL-CIO*, 612 F.3d 314, 320-21 (5th Cir. 2010) (Dennis, J., concurring).[4]

---

[3] Though a properly resolved adjustment board award is enforceable in federal court, *see Int'l Ass'n of Machinists v. Cent. Airlines*, 372 U.S. 682, 685 (1963), a System Board determination is subject only to very narrow judicial review. *Sheehan*, 439 U.S. at 91. In fact, "the scope of judicial review of Adjustment Board decisions is among the narrowest known to the law." *Id.* (internal quotes omitted). In fact, this circuit generally only considers three possible grounds for judicial review of an arbitral decision: (1) whether the Board failed to comply with the RLA's requirements; (2) whether the Board failed to confine itself to matters within the scope of its jurisdiction; and (3) whether the Board's decision was the result of fraud or corruption. *See, e.g.*, *Mitchell*, 481 F.3d at 231 (citing *Cont'l Airlines, Inc. v. Int'l Bhd. of Teamsters*, 391 F.3d 613, 617 (5th Cir. 2004)). We have, however, considered a fourth line of review grounded in redressing violation of a party's due process rights. *See, e.g.*, *id.* (citing *Bhd. of Locomotive Eng'rs v. St. Louis Sw. Ry. Co.*, 757 F.2d 656, 661 (5th Cir. 1985)). Retirees do not suggest that their claim falls under this narrow scope of judicial review and we thus assess only whether their pension claim is a "minor" dispute subject to exclusive and final System Board resolution.

[4] *CareFlite* was decided by a quorum with Judges Dennis and Elrod agreeing on the judgment but not the rationale.

Retirees would be hard-pressed to dispute that resolution of the pension determination here can only be done through interpretation of the CBA, which would normally constitute a "minor" dispute and thus be subject to the RLA's mandatory dispute resolution process. *See Long v. Flying Tiger Line, Inc.*, 994 F.2d 692, 694 (9th Cir. 1993) ("An employee pension plan falls within the scope of the [RLA] and is subject to its mandatory arbitration procedures." (citing *Air Line Pilots Ass'n, Int'l v. Nw. Airlines, Inc.*, 627 F.2d 272, 275 (D.C. Cir. 1980)). To be sure, Retirees' claim is dependent entirely on the proper calculation of pension benefits, which can only be done through reference to the CBA-incorporated Plan.

Retirees rely on two cases within our circuit to stress the argument that parties to a CBA may exempt certain disputes from the RLA's compulsory arbitration procedures. First, Retirees cite *Bonin v. American Airlines*, for the proposition that parties may contract to allow an RLA-governed claim to go to court under ERISA. 621 F.2d 635 (5th Cir. 1980). In *Bonin*, the plaintiff pilot brought suit under ERISA § 502, alleging various claims relating to his wrongful discharge and improper allocation of pension benefits owed him under his pension plan. *Id.* at 637. After clearly acknowledging the exclusive province of RLA systems boards over "minor" disputes, we looked to the language of the Retirement Plan in finding that the pension claims were not subject to interpretation under the CBA. *Id.* at 638-39. We looked to the Retirement Plan itself, which included language governing Board jurisdiction: "'neither the interpretation of the Plan nor its administration shall as such be within the jurisdiction' of the collective bargaining agreement." *Id.* at 639. We thus held that "[s]ince the pension plan . . . is not maintained pursuant to a collective bargaining agreement, the district court has jurisdiction of plaintiff's pension claim under ERISA." *Id.* In coming to this conclusion, we made an important distinction governing claims under ERISA and the RLA:

Congress by enactment of ERISA endorsed in effect two alternative methods of administering pension plan claims for employers whose collective bargaining disputes are governed by the Railway Labor Act: (1) arbitration of employee pension claims or (2) independent administration of claims by the pension plan administrator with a federal right of review pursuant to ERISA.

*Id.*[5]  In effect, the parties may choose whether they want to be governed exclusively by the RLA or maintain a judicial cause of action pursuant to ERISA.

More recently, a quorum of this court decided *CareFlite v. Office and Professional Employees International Union*, which involved a CBA that included terms similar to the dispositive language in *Bonin*.  612 F.3d at 316. Judge Dennis focused on two clauses in the CBA that made claims stemming from the termination of employment for failure to obtain certain licenses and training "non-grievable and non-arbitrable."  *Id.*  He concluded that minor disputes "'must be resolved only through the RLA mechanisms, including the carrier's internal dispute-resolution processes and an adjustment board established by the employer and the unions.'"  *Id.* at 318 (quoting *Hawaiian Airlines*, 512 U.S. at 253).  However, he determined that the "assertion of any right that is not created by a CBA is . . . not subject to binding arbitration under the statute."  *Id.* at 320-21 (citing *Hawaiian Airlines*, 512 U.S. at 258).  Judge Elrod agreed that the particular dispute was not arbitrable, but she employed a different rationale.  *Id.* at 325 (Elrod, J., concurring). She determined that the dispute was minor but that the RLA allows parties to  exclude some minor disputes from arbitration.  *Id.*

The issue presented here is slightly different: whether parties to a CBA can choose to include disputes within the RLA's dispute resolution process, yet

---

[5] Lest there be any confusion, *Bonin* makes clear that Systems Boards and Plan Administrators are distinct entities; the former instituted by the RLA and the latter by ERISA.

evade the exclusivity of RLA arbitration by expressly providing for judicial review of System Board decisions.  We conclude that they cannot.

Retirees contend that their pension plan, and its concomitant integration into the CBA, provides for ERISA relief after an adverse decision by the Retirement Board.  Indeed, the CBA's terms provide as much, clearly contemplating the ability of a claimant to sue under ERISA § 502.  Insofar as parties to a contract cannot avoid the exclusivity of the RLA's arbitral process, neither does ERISA supersede[6] the mandatory arbitration provisions of the RLA, as evidenced by ERISA's express provision ceding authority to previously enacted laws.  29 U.S.C. § 1144(d) ("Nothing in this title shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States . . . or any rule or regulation issued under any such law.").  Retirees' grievances are thus governed not by ERISA, but "entirely by the [CBA] and subject to the jurisdiction of the System Board of Adjustment by the [RLA]." *Bonin*, 621 F.2d at 638.

*Bonin* does make clear that parties have a choice between two alternate avenues for resolving ERISA claims that fall under the RLA: providing for RLA dispute resolution or excluding certain disputes from the RLA's mandates and affording judicial review under ERISA following independent administration of claims by a plan administrator.  Retirees here erroneously seek both—Retirement Board review under the RLA followed by judicial review under ERISA.  The pension claims here are undisputedly grounded in the CBA and require interpretation of the agreement as evidenced by Retirees' utilization of the Retirement Board for review of Continental's interpretation of the Plan.

---

[6] Although the parties sometimes refer to RLA preemption of ERISA claims, "preemption is not the applicable doctrine under these circumstances, since the question whether one federal law takes precedence over another does not implicate the Supremacy Clause." *Hastings v. Wilson*, 516 F.3d 1055, 1058 n.2 (8th Cir. 2008) (quoting *Coker v. TWA*, 165 F.3d 579, 583 (7th Cir. 1999)).

11

No. 11-20279

Retirees reference language in *Bonin* and *CareFlite* that they contend allow parties to freely contract out of the RLA, but further examination of these decisions elucidates their limited application. The CBA provision at issue in *Bonin* completely removed the pension plans and the CBA from the RLA resolution process, making the grievances there subject to federal subject matter jurisdiction because they could not be characterized as "minor" disputes under the RLA.[7] *CareFlite* did not command a majority for its rationale but, in any event, did not involve a party who sought *both* RLA-style review and judicial review. The pension plans here are subject to the RLA, and Retirees have indeed sought review before the Retirement Board.

Moreover, nothing in the CBA explicitly cedes arbitral jurisdiction over adverse benefit determinations from the Board. Rather than finding themselves outside the ambit of the RLA, Retirees contend that the CBA provides for federal judicial review of the Retirement Board determination.[8] This contention is untenable. "[P]arties . . . may neither confer subject matter jurisdiction on the district court nor strip it of such jurisdiction by agreement or waiver." *Buchner*

---

[7] The D.C. Circuit has explained that any "doubts about the arbitrability of issues should be resolved in favor of coverage." *Air Line Pilots Ass'n, Int'l v. Delta Air Lines, Inc.*, 86 F.2d 87, 93 (D.C. Cir. 1988) (citing *Nw. Airlines v. ALPA*, 808 F.2d 76, 82 (D.C. Cir. 1987)). Our sister circuit further found that a party seeking to establish that the System Board has no jurisdiction "must provide positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 93-94 (citation omitted) (comparing the grievance at hand to the one in *Bonin*, the court found no "positive assurance" that the Plan was entirely independent from the CBA because the Plan was expressly incorporated into the CBA). Though clearly not binding on our decision here, the burden established in *Delta* is instructive. At the very least, the Retirement Plan and CBA here create doubts about the independence of the Plan from the CBA and thus should be resolved in favor of coverage under the RLA.

[8] Insofar as Retirees may contend that the judicial review provisions of the CBA constitute a forum selection clause, we find our sister circuit's construction of ERISA persuasive. *See Cruthis v. Metro Life Ins.*, 356 F.3d 816, 819 (7th Cir. 2004) ("[W]e join the several courts that have addressed this issue by holding that the phrase, 'you may file suit in a state or federal court' is a statutorily required disclosure of an employee's ERISA rights rather than a forum selection clause." (citations omitted)).

12

No. 11-20279

*v. FDIC*, 981 F.2d 816, 818 (5th Cir. 1993) (citation omitted); *see Bowe,* 974 F.2d at 103-04 ("'Parties to an agreement cannot create federal subject matter jurisdiction by consent.'" (quoting *Jader v. Principal Mut. Life Ins. Co.*, 925 F.2d 1075, 1077 (8th Cir. 1991)); *see also Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 578 (2008) (holding that the narrow grounds for judicial review of an arbitration award under the Federal Arbitration Act could not be altered by party agreement); c*f. Air Line Pilots Ass'n, Int'l v. US Airways Grp., Inc.* 609 F.3d 338, 343 (4th Cir. 2010) (citing 45 U.S.C. § 184[9]; *Delta*, 863 F.2d at 92-95 (rejecting union's argument that RLA arbitration requirements cannot be waived or bargained away because the purpose of an arbitration board under the RLA is to decide disputes arising out of the CBA, and if a CBA specifically excludes an issue from arbitration or grievance, then a claim based on that issue cannot be said to arise from it).

Retirees contend that they are not seeking to create federal subject matter jurisdiction, but instead are relying on ERISA as an alternative method of administering pension plan claims. In support of this argument, Retirees rely on *McDonald v. Continental*, 4:10-CV-00408 (S.D. Tex. July 8, 2011), addressing this same Plan, which suggested in dicta that the provisions were analogous to those in *Bonin* and *CareFlite* and thus subject to judicial review under ERISA § 502(a). *McDonald,* however, determined that the court lacked jurisdiction

---

[9] "Congress was plainly within its rights to combine the virtues of arbitration with the virtues of collective bargaining. It determined simply that an arbitral forum was required, with the parameters of that forum being left to voluntary agreement." *Id.* Congress thus "relieved federal courts of the burden of delineating what a group adjustment board would or should look like," including the designation of how arbitrators would be chosen, how many there would be, and what procedures they would follow. *Id.* "Congress allocated that task to the parties, allowing them to hash out the specifics through negotiation." *Id.* Congress's recognition of the parties' ability to negotiate the scope of the arbitral forum does not by extension provide parties with the ability to allocate judicial review that Congress did not otherwise provide.

13

over McDonald's particular (and different) claim.  Thus, it does not aid our analysis here.

If Retirees were able to bring suit under ERISA for "minor" disputes it would destroy the purposes of the RLA in promoting an efficient and "comprehensive framework for resolving labor disputes." *Hawaiian Airlines*, 512 U.S. at 252.  The RLA's dispute resolution process, if it applies, is mandatory and exclusive and clearly does not contemplate providing an additional outlet for review.  That is just what Retirees are seeking here—Retirees' interpretation of the RLA would provide claimants with an additional forum for their disputes following adverse determinations.  Perhaps even more concerning would be the potential for employers to seek costly judicial review in contravention of a System Board determination favorable to a claimant.

Lastly, it is well established that judicial review of System Board determinations is exceptionally narrow.  *See, e.g.*, *Sheehan*, 439 U.S. at 91.  In this way, it is similar to the limited judicial review of arbitration awards under the Federal Arbitration Act.  The Supreme Court in *Hall Street Associates* expressly disallowed the parties' agreed upon judicial review that exceeded the judicial review contemplated by the FAA.  552 U.S. at 585-90.  Here, the Retirees are explicitly looking for a "contracted-for" judicial remedy following an adverse RLA-established Retirement Board ruling without showing any of the narrow exceptions to RLA exclusivity.  We decline to depart from established precedent preventing parties from creating federal court jurisdiction where there is none.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's dismissal of Retirees' complaint for want of jurisdiction.