# IN THE SUPREME COURT OF TEXAS

════════════
No. 10-0548
════════════

RUSK STATE HOSPITAL, PETITIONER,

v.

DENNIS BLACK AND PAM BLACK, INDIVIDUALLY AND AS REPRESENTATIVES OF THE ESTATE OF TRAVIS BONHAM BLACK, DECEASED, RESPONDENTS

════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE TWELFTH DISTRICT OF TEXAS
════════════════════════════════════════════════

JUSTICE LEHRMANN, joined by CHIEF JUSTICE JEFFERSON and JUSTICE MEDINA, concurring and dissenting.

Although I concur that this case should be remanded to the trial court, I respectfully dissent, in part, from the Court's judgment. While I agree that subject matter jurisdiction issues such as mootness and ripeness must be considered by an appellate court even if they were not first presented to the trial court, I disagree that sovereign immunity is of the same character. While sovereign immunity does, as the Court notes, implicate subject matter jurisdiction, it also implicates personal jurisdiction. However, acknowledging that sovereign immunity implicates subject matter jurisdiction does not mean that the harsh rules associated with that label necessarily apply. Because we should look to the jurisdictional rules individually, applying them according to the purpose behind the doctrine of sovereign immunity, I would require governmental entities to raise the issue first in the trial court.

# I. SOVEREIGN IMMUNITY

The Court rests its decision on the notion that sovereign immunity "*implicates* subject matter jurisdiction," but carefully avoids squarely determining that it *is* an issue of subject matter jurisdiction. I write separately to explain why I would hold that it is not, were we to reach the issue.

This Court first recognized sovereign immunity in 1847, holding that "no State can be sued in her own courts without her consent and then only in the manner indicated." *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847). The Court has frequently referred to sovereign immunity as jurisdictional. *See, e.g.*, *Anderson, Clayton & Co. v. State ex rel. Allred*, 62 S.W.2d 107, 110 (Tex. 1933) (holding that when the State waived immunity by filing suit, the trial court "acquired jurisdiction of the parties and subject-matter"); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224–26 (Tex. 2004). We have often held that sovereign immunity is properly asserted in the trial court by a plea to the jurisdiction. *See, e.g.*, *Miranda*, 133 S.W.3d at 225–26; *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638–39 (Tex. 1999) (per curiam).

Although we have consistently referred to sovereign immunity as jurisdictional, we have not clearly defined that term. Subject matter jurisdiction and personal jurisdiction are jurisdictional; a court cannot render judgment without both. *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996). Subject matter jurisdiction involves a court's power to hear and resolve the legal and factual issues of a class of cases. *Middleton v. Murff*, 689 S.W.2d 212, 213 (Tex. 1985) (per curiam) (citing *Deen v. Kirk*, 508 S.W.2d 70, 72 (Tex. 1974)). Subject matter jurisdiction cannot be waived or conferred by agreement, can be raised at any time, and must be considered by a court sua sponte. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 379 (Tex. 2006) (Brister, J., concurring) (citing

2

*Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser*, 140 S.W.3d 351, 358 (Tex. 2004)); *see also Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 850 (Tex. 2000). In contrast, personal jurisdiction involves a court's power to bind a particular party. *CSR Ltd.*, 925 S.W.2d at 594. Unlike subject matter jurisdiction, personal jurisdiction can be voluntarily waived by an appearance. *Reata*, 197 S.W.3d at 379 (Brister, J., concurring) (citing *Hilburn v. Jennings*, 698 S.W.2d 99, 100 (Tex. 1985)).

In the last decade, we have sometimes referred to sovereign immunity as a matter of subject matter jurisdiction, beginning with a per curiam opinion in Texas Department of Transportation v. Jones, 8 S.W.3d at 639 (holding that the court of appeals had to determine whether the driver's pleadings in a suit for damages stated a claim under the Texas Tort Claims Act before affirming the trial court's denial of the Department of Transportation's plea to the jurisdiction); *see also, e.g.*, *Univ. of Tex. at El Paso v. Herrera*, 322 S.W.3d 192, 202 (Tex. 2010); *Reata*, 197 S.W.3d at 374; *Miranda*, 133 S.W.3d at 225–26. However, these cases did not involve a governmental unit attempting to raise sovereign immunity for the first time on interlocutory appeal; instead, in every case the governmental unit had raised the issue of sovereign immunity to the trial court. *See Herrera*, 322 S.W.3d at 193; *Tex. Dep't of Ins. v. Reconveyance Servs., Inc.*, 306 S.W.3d 256, 258 (Tex. 2010) (per curiam); *State v. Lueck*, 290 S.W.3d 876, 879 (Tex. 2009); *State v. Shumake*, 199 S.W.3d 279, 282 (Tex. 2006); *Hoff v. Nueces Cnty.*, 153 S.W.3d 45, 47 (Tex. 2004) (per curiam); *Reata*, 197 S.W.3d at 373; *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 637 (Tex. 2004); *Miranda*, 133 S.W.3d at 221–22; *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 541 (Tex. 2003); *State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 325 (Tex. 2002); *Travis Cnty. v. Pelzel & Assocs., Inc.*, 77 S.W.3d 246, 247 (Tex. 2002); *Tex. Natural Res. Conservation*

3

*Comm'n v. IT–Davy*, 74 S.W.3d 849, 851 (Tex. 2002); *Tex. Dep't of Transp. v. Garza*, 70 S.W.3d 802, 804 (Tex. 2002); *Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 586 (Tex. 2001); *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 866 (Tex. 2001); *Jones*, 8 S.W.3d at 637. Moreover, in none of these cases has the Court analyzed the legal issues involved in holding that sovereign immunity is an issue of subject matter jurisdiction.

### A. Sovereign Immunity Implicates Aspects of Both Subject Matter Jurisdiction and Personal Jurisdiction

Characterizing an issue as subject matter jurisdiction has profound consequences. Therefore, we should be cautious when we apply that label and should not default to using it in circumstances when it is not clear that the issue is solely one of subject matter jurisdiction. I would hold that, because sovereign immunity implicates aspects of both personal jurisdiction and subject matter jurisdiction, but is identical to neither, the rules associated with subject matter jurisdiction do not apply generally. Rather, jurisdictional rules apply individually, according to the purposes underlying the doctrine of sovereign immunity. *Reata*, 197 S.W.3d at 382 (Brister, J., concurring).

Although some of our recent cases have, with no analysis, referred to sovereign immunity as an issue of subject matter jurisdiction, sovereign immunity implicates elements of both personal jurisdiction and subject matter jurisdiction, and has always had its own set of jurisdictional rules. In the earliest Texas cases, sovereign immunity was addressed in terms of amenability to suit, a term borrowed from personal jurisdiction. *Reata*, 197 S.W.3d at 380 & n.16 (Brister, J., concurring) ("'[I]t is one of the essential attributes of sovereignty not to be amenable to the suit of a private person without its own consent . . . .'" (quoting *Bd. of Land Comm'rs v. Walling*, Dallam 524 (Tex.

4

1843))).  These cases were not anomalies, as sovereign immunity has been traditionally considered a problem of personal jurisdiction.  In his *Commentaries on the Laws of England*, Blackstone concluded that sovereign immunity arose from the nature of the sovereign party, not the subject matter of the case:

> Hence, it is, that no suit or action can be brought against the king, even in civil matters, because no court can have jurisdiction over him.  For all jurisdiction implies superiority of power: authority to try would be vain and idle, without an authority to redress; and the sentence of a court would be contemptible, unless that court had power to command the execution of it: but, who . . . shall command the king?

1 WILLIAM BLACKSTONE, COMMENTARIES *242.  The Founders also referred to sovereign immunity in terms of personal jurisdiction.  *See* Caleb Nelson, *Sovereign Immunity as a Doctrine of Personal Jurisdiction*, 115 HARV. L. REV. 1559, 1565–66 (2002) (explaining that the Founders believed sovereign immunity was more relevant to personal jurisdiction than subject matter jurisdiction).  In addressing the question of state sovereign authority, Alexander Hamilton borrowed the language of personal jurisdiction when he wrote in the Federalist Papers, "It is inherent in the nature of sovereignty not to be amenable to the suit of an individual *without its consent*."  THE FEDERALIST NO. 81 (Alexander Hamilton); *see also, e.g.*, *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 200 (Tex. 1985) (per curiam) (listing the defendant being "amenable to the jurisdiction of the court" as one of the elements of personal jurisdiction).

As I have noted, sovereign immunity implicates elements of both subject matter jurisdiction and personal jurisdiction.  While the decision whether to compensate particular claimants may raise separation of powers concerns, implicating policy issues beyond the traditional realm of judicial

proceedings, *see Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 401 (Tex. 2011) (Hecht, J., concurring in part and dissenting in part), and invoking subject matter jurisdiction issues, these considerations also arise from the fact that the State is the party being sued. While it is true that the judiciary is not the proper branch of government to decide how the State should spend its money, the authority to render judgment that obliges parties to pay is not related to whether the party can or should pay. The sovereign immunity doctrine flows from the fact that the State is the party at risk—an issue more closely aligned with personal jurisdiction. At its core, there is something incongruous about saying that traditional contract and tort suits are beyond the subject matter of the judiciary simply because one party is a governmental entity. *See* Scott Dodson, *Mandatory Rules*, 61 STAN. L. REV. 1, 20 (2008) ("The primary function of state sovereign immunity—granting a state the right not to be subject to a lawsuit at the insistence of an individual—speaks to a right of a particular party, not to a limitation on the court's power to hear the case."). A suit against the State is beyond the judicial cognizance of the courts because of the State's role as a party, not because of the subject matter of the suit. Despite sometimes referring to sovereign immunity as an issue of subject matter jurisdiction, we have also held that the State no longer had immunity because it filed an affirmative claim for relief. *Reata*, 197 S.W.3d at 377 (holding that the City of Dallas's decision to file suit "encompassed a decision to leave its sphere of immunity" for related claims); *see also Kinnear v. Tex. Comm'n on Human Rights*, 14 S.W.3d 299, 300 (Tex. 2000) (per curiam) (holding that the trial court had jurisdiction over claims against the State in a case where the State had filed suit); *IT–Davy*, 74 S.W.3d at 861 (Hecht, J., concurring) ("[T]he State can waive immunity by filing suit."). These decisions are inconsistent with the absolute nature of subject matter jurisdiction,

6

which cannot be waived and can be raised at any time. *See Gibson*, 22 S.W.3d at 850 ("[S]ubject matter jurisdiction challenges cannot be waived, and may be raised for the first time on appeal."); Scott Dodson, *Hybridizing Jurisdiction*, 99 CALIF. L. REV. 1439, 1473 (2011) (noting that sovereign immunity lacks some features of subject matter jurisdiction). The ability of states to waive immunity or consent to suit is an important feature which is inconsistent with the characterization of sovereign immunity as an issue of subject matter jurisdiction:

> The state legislature may wish to waive immunity in an entire class of cases, such as discrimination cases. Or, the state may wish to consent to a particular lawsuit from which it would otherwise be immune. Public pressure or individualized considerations of fairness and justice may motivate a state's decision to waive or consent. On the other hand, equally important concerns for the state fisc might justify a decision not to waive immunity or consent to suit. In short, the [non-subject matter jurisdiction] characteristics of waiver and consent provide an opportunity for the states to strike a balance between the legitimate concerns of suing a state and the need for redress of injuries caused by the state. The importance of the ability to waive immunity or consent to suit supports a [non-subject matter jurisdictional] characterization.

Dodson, *Mandatory Rules*, *supra*, at 23 (citations omitted). It is clear that "sovereign immunity is difficult—perhaps impossible—to characterize as [subject matter jurisdiction] because it can be waived or consented to." Dodson, *Hybridizing Jurisdiction*, *supra*, at 1483.

Similarly, in federal courts, sovereign immunity is not synonymous with subject matter jurisdiction. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997) (holding that the Eleventh Amendment "enacts a sovereign immunity from suit, rather than a nonwaivable limit on the Federal Judiciary's subject-matter jurisdiction"); Katherine Florey, *Insufficiently Jurisdictional: The Case Against Treating State Sovereign Immunity as an Article III Doctrine*, 92 CALIF. L. REV.

1375, 1399 (2004) ("[S]tate sovereign immunity and [subject matter] jurisdictional requirements are more different than alike."). Federal courts have recognized that states may waive their sovereign immunity, revealing an inconsistency with subject matter jurisdiction, which cannot be created by waiver or consent. *See Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 851 (1986) (explaining that parties cannot confer subject matter jurisdiction beyond the limitations imposed by Article III by consent (citing *United States v. Griffin*, 303 U.S. 226, 229 (1938))); *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985) (noting that a State may waive its immunity and consent to suit in federal court); *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 786 (5th Cir. 2012) (noting that parties cannot create subject matter jurisdiction by consent or waiver (citing *Buchner v. FDIC*, 981 F.2d 816, 818 (5th Cir. 1993))); *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 802 (5th Cir. 2011) ("Litigants cannot bestow subject matter jurisdiction on federal courts by waiver or consent."); *Meyers ex rel. Benzing v. Tex.,* 410 F.3d 236, 255 (5th Cir. 2005) ("[W]hen Texas removed this case to federal court it voluntarily invoked the jurisdiction of the federal courts and waived its immunity from suit in federal court." (citing *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002))); Nelson, *supra*, at 1610 ("In deriving its doctrine of sovereign immunity, the [Supreme] Court has therefore mixed together two very different sorts of ideas; it has blended concepts drawn from the law of personal jurisdiction with concepts drawn from the law of subject matter jurisdiction."). One scholar summed up the difficulties inherent in federal courts treating sovereign immunity as a subject matter jurisdiction issue:

> [S]overeign immunity doctrine contains elements that are inconsistent with regarding it as a limit on subject matter jurisdiction. While parties cannot ordinarily create a basis for federal jurisdiction by consenting to litigate in federal court, a state may

waive sovereign immunity both explicitly and by its conduct during litigation. A court *may* raise an Eleventh Amendment issue *sua sponte*; by contrast, it *must* address Article III matters, such as standing or an absence of federal question jurisdiction, as soon as they come to its attention. Congress may, when acting pursuant to its Fourteenth Amendment authority, abrogate state sovereign immunity; it has no corresponding power with respect to any other Article III doctrine. Finally, state sovereign immunity, unlike any other Article III question, is subject to a broad and important exception: under the doctrine of *Ex parte Young*, a suit for prospective injunctive relief against a state official is not considered a suit against the state and may be pursued in federal court.

Florey, *supra*, at 1379–80 (citations omitted). The ability of states to waive sovereign immunity or consent to suit is inconsistent with the characterization of sovereign immunity as a subject matter jurisdiction issue under both federal and Texas case law.

Additionally, in many states, sovereign immunity is not considered an element of subject matter jurisdiction. *See, e.g.*, *Sea Hawk Seafoods, Inc. v. State*, 215 P.3d 333, 339 (Alaska 2009) (describing state sovereign immunity as an affirmative defense "that does not affect a court's subject-matter jurisdiction"); *Washington v. Whitaker*, 451 S.E.2d 894, 898 (S.C. 1994) ("[W]e overrule the antiquated rule that sovereign immunity is a jurisdictional bar and, accordingly, cannot be waived. We join those jurisdictions which hold that sovereign immunity is an affirmative defense that must be pled." (citations omitted)). Indeed, some states have held that sovereign immunity is an issue of personal jurisdiction rather than an issue of subject matter jurisdiction. *See, e.g.*, *German v. Wis. Dep't of Transp., Div. of State Patrol*, 612 N.W.2d 50, 55 (Wis. 2000) ("If sovereign immunity is properly raised, then the court is without personal jurisdiction over the state."); *Data Gen. Corp. v. Cnty. of Durham*, 545 S.E.2d 243, 246 (N.C. Ct. App. 2001) ("[S]overeign immunity presents a

question of personal jurisdiction rather than subject matter jurisdiction . . . .”).  Sovereign immunity is far from universally considered a subject matter jurisdiction issue.

Given that sovereign immunity implicates aspects of both subject matter and personal jurisdiction, it becomes apparent that its jurisdictional rules cannot be derived simply by labeling sovereign immunity subject matter or personal jurisdiction.  Accordingly, it is time to recognize that “sovereign immunity has always had its own set of jurisdictional rules because jurisdiction over private and public parties is simply different.”  *Reata*, 197 S.W.3d at 379 (Brister, J., concurring).

**B. The Implications of Treating Sovereign Immunity as a Subject Matter Jurisdiction Issue**

A decision that sovereign immunity presents a question of subject matter jurisdiction would have profound implications.  Since subject matter jurisdiction “‘cannot be conferred upon any court by consent or waiver,’ a judgment [against a governmental actor] will never be considered final if the court lacked subject-matter jurisdiction.”  *Dubai Petrol. Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000) (quoting *Fed. Underwriters Exch. v. Pugh*, 174 S.W.2d 598, 600 (Tex. 1943)).  In *Wisconsin Department of Corrections v. Schacht*, Justice Kennedy noted problems with allowing States to belatedly assert sovereign immunity:

> [W]e allow States to proceed to judgment without facing any real risk of adverse consequences.  Should the State prevail, the plaintiff would be bound by principles of res judicata.  If the State were to lose, however, it could void the entire judgment simply by asserting its immunity on appeal.

524 U.S. 381, 394 (1998) (Kennedy, J., concurring).  Even a losing plaintiff would be able to avoid the entire judgment by asserting the State’s sovereign immunity on appeal.  If sovereign immunity

deprives the courts of subject matter jurisdiction, governmental entities could attack years-old judgments by asserting sovereign immunity because without subject matter jurisdiction, the judgments would be void. Due to the dramatic effects and perpetual uncertainty caused by characterizing an issue as one of subject matter jurisdiction, this Court in *Dubai* noted that "the modern direction of policy is to reduce the vulnerability of final judgments to attack on the ground that the tribunal lacked subject matter jurisdiction." 12 S.W.3d at 76 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 11 cmt. e (1982) (internal quotation marks omitted)).

## II. ASSERTING SOVEREIGN IMMUNITY ON INTERLOCUTORY APPEAL

Generally, appellate jurisdiction exists only in cases where a court has rendered a final judgment disposing of all issues and parties. *See* TEX. CIV. PRAC. & REM. CODE § 51.012. The Legislature provided a narrow exception for interlocutory appeals in section 51.014, which allows them under certain circumstances, including when the trial court denies a plea to the jurisdiction by a governmental entity. *See id.* § 51.014(a)(8); *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 355 (Tex. 2001) (noting "the Legislature's intent that section 51.014 be strictly construed"). Our courts of appeals have repeatedly held that sovereign immunity should be raised in the trial court, and that issues not presented to the trial court on a plea to the jurisdiction may not be raised in an interlocutory appeal. *See Scott v. Alphonso Crutch LSC Charter Sch., Inc.*, ___ S.W.3d ___, ___ (Tex. App.—Austin 2010, pet. filed) (mem. op.); *Scott v. Alphonso Crutch Life Support Ctr.*, ___ S.W.3d ___, ___ (Tex. App.—Austin 2009, pet. filed) (mem. op.); *Clear Lake City Water Auth. v. Friendswood Dev. Co.*, 256 S.W.3d 735, 747 n.14 (Tex. App.—Houston [14th Dist.] 2008, pet.

11

dism'd); *City of Celina v. Dynavest Joint Venture*, 253 S.W.3d 399, 404 (Tex. App.—Austin 2008, no. pet.); *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia*, 244 S.W.3d 455, 461–62 (Tex. App.—Dallas 2007), *aff'd on other grounds*, 324 S.W.3d 544 (Tex. 2010); *Kinney Cnty. Groundwater Conservation Dist. v. Boulware*, 238 S.W.3d 452, 461 (Tex. App.—San Antonio 2007, no pet.); *Austin Indep. Sch. Dist. v. Lowery*, 212 S.W.3d 827, 834 (Tex. App.—Austin 2006, pet. denied); *Brenham Hous. Auth. v. Davies*, 158 S.W.3d 53, 61 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *City of Dallas v. First Trade Union Sav. Bank*, 133 S.W.3d 680, 687–88 (Tex. App.—Dallas 2003, pet. denied). *But see Tex. Dep't of Transp. v. Olivares*, 316 S.W.3d 89, 95 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

Looking to the purposes behind the doctrine of sovereign immunity for guidance, I agree with those courts of appeals that have held that an immunity defense may not be raised for the first time on appeal. First, immunity from suit protects the government from the expense involved in defending lawsuits. *Reata*, 197 S.W.3d at 382 (Brister, J., concurring). Requiring the government to raise the issue of sovereign immunity in the trial court reduces such expense by avoiding ongoing, unnecessary litigation early in the process. Because sovereign immunity's modern rationale is the protection of the public fisc, it should be asserted as early as possible. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 331–32 (Tex. 2006) (stating that an important purpose of sovereign immunity is "to shield the public from the costs and consequences of improvident actions of their governments"); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695 (Tex. 2003) (noting that states have retained immunity to "protect the public treasury"). The purpose of protecting the public fisc is ill-served by allowing immunity to be raised post-judgment, possibly even years after litigation has

12

ended. *See* Dodson, *Mandatory Rules*, *supra*, at 24 (noting that a governmental actor "has little to gain by asserting immunity only late in the proceedings"). Taxpayers are penalized when the State is not required to bring the matter up early to get the case dismissed before money is expended defending the lawsuit. When attorneys for the State fail to raise sovereign immunity in the trial court, that failure might not be based on oversight. The State's attorneys often make tactical decisions in deciding which issues they choose to raise. By not requiring the State to raise the issue of sovereign immunity in the trial court, the Court is providing it with a strategic advantage that other parties lack. Moreover, such a lenient rule penalizes taxpayers by dissuading conscientious attorneys for the State from developing procedures to ensure that the matter is raised timely (in order to avoid subsequent liability), resulting in unnecessary and costly litigation. Second, the doctrine should not result in "one law for the sovereign and another for the subject," as such a rule would look "less like sovereign immunity than sovereign inequity." *Reata*, 197 S.W.3d at 383 (Brister, J., concurring). Whether the failure to assert immunity in the trial court is intentional or not, no other party is excused from raising an issue due to inadvertence; the State should not be treated differently. For these reasons, I would hold that governmental entities may not raise sovereign immunity for the first time on appeal.

### III. Conclusion

I concur in the Court's judgment remanding the case to the trial court, but for the reason set forth by the court of appeals—so that the trial court may consider granting the Blacks a thirty-day extension to cure the deficiencies in their reports—rather than for the reasons expressed by this Court

13

today. Any issues dealing with sovereign immunity should be raised at that time in the trial court.

I disagree that the government is entitled to raise the issue for the first time on appeal.

                                                   _____

                                                   Debra H. Lehrmann
                                                   Justice

**OPINION DELIVERED:** August 31, 2012