STEPHEN A. HIGGINSON, Circuit Judge:
On May 7, 2017, Texas Governor Greg Abbott signed into law Senate Bill 4 ("SB 4"). SB 4 curbs "sanctuary city" policies by requiring Texas law enforcement agencies to "comply with, honor, and fulfill" federal immigration detainer requests, Tex. Crim. Proc. Code Ann. § 2.251(a), and barring local entities from "prohibit[ing] or materially limit[ing] the enforcement of immigration laws," Tex. Gov't Code Ann. § 752.053(a). SB 4 authorizes, and in some instances requires, Texas's Attorney General to enforce its provisions through civil and criminal actions. City of El Cenizo, Texas v. Texas , 890 F.3d 164, 175 (5th Cir. 2018). On the flip side, SB 4 requires Texas to defend and indemnify local entities against any "cause of action aris[ing] out of a claim involving the local entity's good-faith compliance with an immigration detainer request." Tex. Gov't Code Ann. § 402.0241. SB 4 also provides for a "competitive grant program to provide financial assistance to local entities to offset costs related to ... enforcing immigration laws; or ... complying with, honoring, or fulfilling immigration detainer requests." Tex. Gov't Code Ann. § 772.0073(b). SB 4 became effective on September 1, 2017.
SB 4's enactment triggered a flurry of lawsuits. Relevant to this appeal, hours after the bill was approved by Governor Abbott, Texas and its Attorney General Ken Paxton (collectively, "Texas" or "the state") filed suit in the Austin division of the Western District of Texas seeking a *811 declaratory judgment under 28 U.S.C. § 2201 that SB 4 does not violate the Fourth or Fourteenth Amendments to the United States Constitution, and is not preempted by federal law. Texas named as defendants Travis County and its public officials, the city of Austin and its public officials, and the Mexican American Legal Defense and Education Fund ("MALDEF"). The state alleged that Travis County and Austin had a "policy and practice of ignoring ICE detainer requests and refusing to cooperate with federal immigration officials," and that Austin and MALDEF intended to sue Texas over SB 4's constitutionality.
Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(1), arguing that Texas lacked Article III standing and was seeking an impermissible advisory opinion. Texas amended its complaint as of right on May 31, adding other local-entity and non-profit defendants as well as claims for declaratory relief based on the First Amendment to the United States Constitution and provisions of the Texas Constitution. Defendants renewed their 12(b)(1) challenges.
On August 8, 2017, the district court dismissed Texas's complaint, finding that Texas lacked Article III standing to seek a declaratory judgment on the constitutionality of a statute before the law had become effective. The district court noted that "[t]o hold otherwise would be to 'open a Pandora's box and invite every local government to seek a court's judicial blessing' on a law prior to it taking effect." Texas timely appealed.[1]
A district court's dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1) is subject to de novo review. Ballew v. Cont'l Airlines, Inc. , 668 F.3d 777, 781 (5th Cir. 2012). We may affirm "on any ground supported by the record, including one not reached by the district court." Id.
Before resolving Article III standing disputes, we must determine whether the district court possessed "jurisdiction conferred by statute." See Stockman v. Fed. Election Comm'n , 138 F.3d 144, 150-51 (5th Cir. 1998). "Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims. It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking. This is the 'first principle of federal jurisdiction.' " Id. at 151 (quoting Hart & Wechsler, The Federal Courts and the Federal System 835 (2d ed. 1973) ) (other citations omitted). On appeal, Texas asserts jurisdiction solely under 28 U.S.C. § 1331, the federal-question jurisdiction statute.
*812 Our analysis of § 1331 begins and ends with Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California , 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).[2] California agency Franchise Tax Board filed a state court action against Construction Laborers Vacation Trust, a regulated trust under the federal Employment Retirement Income Security Act of 1974 ("ERISA"). The agency sought a declaration that ERISA did not preempt state law authorizing the agency to issue levies against the trust for delinquent taxes owed by trust beneficiaries. The trust removed to federal district court under 28 U.S.C. § 1441 and the agency appealed, contending that the district court lacked jurisdiction. Id. at 4-7, 103 S.Ct. 2841.
The Court found that the agency's jurisdictional challenge reduced to "whether a federal district court could take [original] jurisdiction of appellant's declaratory judgment claim had it been brought under 28 U.S.C. § 2201." Id. at 19, 103 S.Ct. 2841 ; see 28 U.S.C. § 1441 (providing that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed"). The Court concluded that § 1331 's grant of federal-question jurisdiction does not encompass "suits by the States to declare the validity of their regulations despite possibly conflicting federal law." Franchise Tax Board , 463 U.S. at 21, 103 S.Ct. 2841 ; see also 13D Wright & Miller, Federal Practice & Procedure § 3566 (3d ed. 2017) ("[T]here is no federal jurisdiction of a suit by a state for a declaration of the validity of state law even though the party being sued by the state could have raised the issue in federal court in an action for coercive relief."). Emphasizing that statutory jurisdictional grants like § 1331 should be interpreted "with an eye to practicality and necessity," the Court explained,
States are not significantly prejudiced by an inability to come to federal court for a declaratory judgment in advance of a possible injunctive suit by a person subject to federal regulation. They have a variety of means by which they can enforce their own laws in their own courts, and they do not suffer if the preemption questions such enforcement may raise are tested there.
Franchise Tax Board , 463 U.S. at 20-21, 103 S.Ct. 2841. "[U]ntil Congress informs us otherwise, such a suit is not within the original jurisdiction of the United States district courts." Id. at 22, 103 S.Ct. 2841.
Franchise Tax Board therefore reinforces comity among federal and state courts and mandates dismissing Texas's declaratory relief action. See Republican Party of Guam v. Gutierrez , 277 F.3d 1086, 1090 (9th Cir. 2002) (applying Franchise Tax Board to dismiss declaratory suit by Guam legislature and noting that "the Guam legislature has access to the Guam courts for the enforcement of" the laws at issue). The state's efforts to avoid dismissal are unconvincing. For instance, Texas leads with the argument that "there is no federal regulation at issue here that would allow an injunctive suit by the defendants." That is not accurate, and Texas's *813 own brief repeatedly refers to "the existence of a cause of action held by the declaratory defendants (coercive plaintiffs in the San Antonio lawsuits)." Texas also suggests that Franchise Tax Board does not control because the state agency there initially filed in state court and only sought a declaration as to preemption, not constitutionality. Such distinctions are immaterial. Franchise Tax Board expressly addressed original jurisdiction over a § 2201 action filed by a state, and did not turn on a difference between preemption claims and constitutionality claims. See State of Mo. ex rel. Missouri Highway & Transp. Comm'n v. Cuffley , 112 F.3d 1332, 1336 (8th Cir. 1997) (applying Franchise Tax Board to dismiss state's declaratory constitutional claims).
Consequently, we AFFIRM the district court's dismissal. Because we find that the district court lacked federal-question jurisdiction under § 1331, we need not reach the district court's Article III standing analysis.

As to the merits issues, other cases overtook this one. The day after Texas filed this lawsuit, the city of El Cenizo sued Texas in the San Antonio division of the Western District of Texas. El Cenizo sought to enjoin SB 4's enforcement. El Paso County and the city of San Antonio also sued in the San Antonio division. The three cases were consolidated, and four more local entities (Austin, Travis County, the city of Dallas, and the city of Houston) joined the consolidated action as plaintiffs-intervenors. On June 8, 2017, Texas moved to transfer the consolidated action from the San Antonio division to the Austin division. The transfer motion was denied without prejudice pending the Austin division's decision on Article III standing. In the consolidated action in the San Antonio division, extensive litigation on the local entities' injunction motions followed. See generally City of El Cenizo , 890 F.3d at 191-92. The district court issued a preliminary injunction against many of SB 4's provisions, but this court reversed that preliminary injunction in large part, explaining that the plaintiffs "have not made a showing that they are likely to succeed on the merits" of most of their claims. Id. at 192. As such, most of SB 4 is now in effect.

In the proceedings below, defendants did not contest federal-question jurisdiction and focused on Article III standing. Commendably, whether Franchise Tax Board precludes federal-question jurisdiction here was first presented on appeal by Texas in its opening brief. This court's resolution of federal-question jurisdiction is appropriate because "every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts." Steel Co. v. Citizens for a Better Envm't , 523 U.S. 83, 95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (quotation marks omitted).