# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 14, 2025

Lyle W. Cayce
Clerk

————————

No. 19-10644

————————

Jeanette H. Oldham,

*Plaintiff—Appellant*,

*versus*

United States Small Business Administration; First National Bank of Baird, *doing business as* First Bank Texas,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 1:18-CV-73

———————————————————————

Before Richman, Southwick, and Oldham, *Circuit Judges*.

Priscilla Richman:[*]

Leslie Oldham (Mr. Oldham) applied for a loan from First Bank Texas (the Bank) guaranteed by the Small Business Administration (SBA). During negotiations with the Bank, Mr. Oldham received an email from a Bank representative stating that the "SBA require[d]" a personal guaranty from his wife, Jeanette Oldham (Mrs. Oldham). Mrs. Oldham claims that the

———————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

Bank's requirement that she personally guarantee the loan violated both applicable federal regulations and the SBA's Standard Operating Procedures (SOP). Mrs. Oldham filed suit in Texas state court against the Bank and the SBA, seeking damages and a declaratory judgment invalidating the personal guaranty. After removal and an amended complaint, the Bank and the SBA filed motions to dismiss. The district court granted both. We affirm in part, reverse and vacate in part, and remand for further proceedings.

## I

In 2006, Mr. Oldham applied for an SBA-guaranteed loan from the Bank to finance his business. Mr. Oldham was the president and the majority owner of the business; Mrs. Oldham was the secretary. Mrs. Oldham had no ownership interest in the company. Just days before the loan's closing date, the senior vice president of the Bank sent an email to Mr. Oldham. The email said that both Mr. Oldham and Mrs. Oldham would have to sign the loan application because the "SBA require[d]" it.

At the signing, the Bank told Mrs. Oldham directly that the "SBA required her to be a guarantor and to sign a guaranty." The guaranty stated that it was "continuing and unconditional," meaning that it would "not be limited in time, and [would] incorporate all past, present, and future obligations [of the] borrower." According to the agreement, Mrs. Oldham's "joint and several liability" would continue to exist "until payment is made of every obligation of the Borrower now due or hereafter to become due."

Not long after the signing, the Bank executed an SBA loan-authorization form. In that form, the Bank stated that Mrs. Oldham's personal guaranty was required to satisfy the SBA's collateral conditions. In the negotiations leading up to the loan's closing date, Mr. Oldham had been unwilling to pledge his ranch property as collateral. Unable to obtain the necessary assurances from Mr. Oldham, the Bank told Mrs. Oldham that the

SBA required her personal guaranty. But at the time, Mrs. Oldham was unemployed, and she had "no income or liquid assets."

In 2009, the business became insolvent and defaulted on the loan. The business and the Bank subsequently entered into a restructuring agreement, which refinanced the debt and allowed for extended payment terms. In 2012, after the business defaulted on the restructuring agreement, the Bank sued Mrs. Oldham to collect on her personal guaranty. Mrs. Oldham responded to the lawsuit by denying liability and claiming that the guaranty was illegal. The matter remained on the docket until February 2015 when the Bank nonsuited the case. The Bank then sold the debt to the SBA according to the terms of the SBA's loan-guarantee program.

In March 2017, the SBA sent Mrs. Oldham a notice letter, which informed her that the debt on her guaranty was due and that the SBA intended to offset her Social Security payments if the debt was not paid. The notice letter stated that Mrs. Oldham could send a letter to the SBA to dispute the debt. The SBA would then send Mrs. Oldham records related to the debt and review the validity of the debt. The notice letter did not say that Mrs. Oldham was required to request a hearing to dispute the debt.

On May 1, 2017, Mrs. Oldham sent a response to the SBA disputing the validity of the debt. Nine days later, the SBA responded, saying it had "reviewed" the restructuring agreement and had "determined that [Mrs. Oldham's] debt was not satisfied." In September of that same year, the Treasury Department began withholding money from Mrs. Oldham's Social Security payments to satisfy her alleged debt to the SBA.

In 2018, Mrs. Oldham sued the Bank and the SBA in Texas state court. After removal, the Bank and the SBA filed motions to dismiss. Both motions were mooted when Mrs. Oldham filed an amended complaint. The Bank and the SBA renewed their motions to dismiss not long thereafter. The

No. 19-10644

district court granted both motions "[e]ssentially for the reasons argued by" the defendants. This appeal followed.

## II

On appeal, Mrs. Oldham has abandoned her declaratory judgment action against the Bank. But she continues to press two separate monetary damage claims against the Bank: (1) fraudulent misrepresentation; and (2) negligent misrepresentation. The district court dismissed both claims as barred by the statute of limitations. We review the dismissal de novo.[1]

Mrs. Oldham's fraudulent misrepresentation claim against the Bank is governed by a four-year statute of limitations.[2] The negligent misrepresentation claim is governed by a two-year statute of limitations.[3] Under Texas law, the statute of limitations for such claims begins to run at the time the alleged false statement or misrepresentation is made.[4] Here,

---

[1] *See, e.g.*, *Budhathoki v. Nielsen*, 898 F.3d 504, 507 (5th Cir. 2018) (citing *Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741, 744 (5th Cir. 2010)).

[2] TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(4); *see also Shannon v. Law-Yone*, 950 S.W.2d 429, 433 (Tex. App.—Fort Worth 1997, pet. denied).

[3] TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a); *see also Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 516-17 (Tex. 1988); *Weaver & Tidwell, L.L.P. v. Guarantee Co. of N. Am. USA*, 427 S.W.3d 559, 565 (Tex. App.—Dallas 2014, pet. denied) ("The statute of limitations for a negligent misrepresentation cause of action is two years." (first citing *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998); and then citing *Collective Asset Partners, LLC v. McDade*, 400 S.W.3d 213, 217 (Tex. App.—Dallas 2013, no pet.))).

[4] *See Exxon Corp. v. Emerald Oil & Gas Co.,* 348 S.W.3d 194, 202 (Tex. 2011) ("Causes of action accrue and statutes of limitations begin to run when facts come into existence that authorize a claimant to seek a judicial remedy." (first citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003); and then citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998))); *Woods*, 769 S.W.2d at 517 ("In an action for fraud, limitations begins to run when the fraud is perpetrated, or if the fraud is concealed, from the time it is discovered or could have been discovered by the exercise of reasonable diligence." (citing *Quinn v. Press*, 140 S.W.2d 438,

both of Mrs. Oldham's claims are based on the Bank's 2006 statement that the SBA required her to personally guarantee the loan for her husband's business. Therefore, the statute of limitations for the fraudulent misrepresentation and negligent misrepresentation claims based on this statement would have expired in 2010 and 2008 respectively. Mrs. Oldham did not bring this suit until 2018, well after the statute of limitations had expired.

Mrs. Oldham argues that her suit is nonetheless timely because fraudulent concealment and the discovery rule tolled the statute of limitations for both claims. Fraudulent concealment and the discovery rule delay accrual until the date an alleged injury could reasonably have been discovered with due diligence.[5] However, due diligence requires potential plaintiffs to "make themselves aware of pertinent information available in the public record."[6]

Here, Mrs. Oldham frames her alleged injury as a violation of federal regulations and the SOP. Both sources are public information. Mrs. Oldham should have availed herself of both in 2006 at the time she signed her guaranty. She should have also availed herself of this information in 2012, when the Bank first sued to enforce the guaranty. In fact, Mrs. Oldham answered the lawsuit in 2012 by claiming that the guaranty was illegal. Mrs. Oldham had a duty to learn about these authorities in 2012 when she asserted the illegality defense against the Bank. Even assuming Mrs. Oldham did not

---

440 (Tex. 1940), *superseded by statute on other grounds*, Act of May 27, 1979, 66th Leg., R.S., ch. 716, §§ 1-2, 1979 Tex. Gen. Laws. 1768 (current version at Tex. Civ. Prac. & Rem. Code Ann. §§ 16.003, 16.004), *as recognized in Williams v. Khalaf*, 802 S.W.2d 651 (Tex. 1990))).

[5] *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 65-67 (Tex. 2011).

[6] *Id.* at 67.

discover her injury until 2012, the statute of limitations would nonetheless bar her claims since she did not sue until 2018. Therefore, neither fraudulent concealment nor the discovery rule tolls the statute of limitations for Mrs. Oldham's claims.[7] The district court did not err in dismissing these claims.

Mrs. Oldham presents another basis for her misrepresentation claims by arguing that the Bank committed a separate tortious act when it sold the guaranty to the SBA after nonsuiting its case against Mrs. Oldham in 2015. She alleges that the sale itself was tortious because the Bank negligently or knowingly sold an illegal loan to the SBA and provided the SBA "wrongful guidance" regarding the loan. But Mrs. Oldham did not raise this issue until her reply brief. Although Mrs. Oldham referenced the sale in her amended complaint in the district court, she never claimed that the sale itself was wrongful in her amended complaint or in her opening brief on appeal. Therefore, this argument is forfeited.[8] The district court properly dismissed Mrs. Oldham's claims against the Bank.

## III

Mrs. Oldham's amended complaint also sought a declaratory judgment against the SBA that the personal guaranty she signed in 2006 was unenforceable.[9] The district court dismissed Mrs. Oldham's amended

---

[7] *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 202 (Tex. 2011) (first citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003); and then citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998)).

[8] *See United States v. Ponce*, 896 F.3d 726, 728 (5th Cir. 2018) ("[S]he has forfeited that argument by raising it for the first time in h[er] reply brief." (citing *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993))).

[9] Mrs. Oldham also brought claims under the Federal Debt Collection Procedures Act and the Equal Credit Opportunity Act in her amended complaint in the district court. However, she does not make any argument concerning these claims on appeal.

No. 19-10644

complaint against the SBA "[e]ssentially for the reasons argued by SBA in [its] . . . Motion to Dismiss."

For the first time on appeal, the SBA now argues that, to the extent the Bank's alleged fraudulent inducement or novation "derivatively applies or is imputed to the SBA," the relevant statutes of limitations bar Mrs. Oldham's claims. A statute of limitations is an affirmative defense which must be set forth in a responsive pleading.[10] Because the SBA did not raise a limitations defense in the district court, any such argument is forfeited.[11] In any event, the SBA's limited references to limitations on appeal mean that we would deem the defense abandoned for failure to brief it properly here.[12]

Because we may affirm on any ground supported by the record and argued below, we review each argument in the SBA's motion to dismiss as a potential basis for dismissal.[13] The SBA's motion included four main arguments: (1) the court lacked subject-matter jurisdiction because Mrs. Oldham sued the SBA and not the SBA administrator; (2) Mrs. Oldham

_____

Accordingly, any argument concerning these claims is forfeited. *See United States v. Gentry*, 941 F.3d 767, 791 (5th Cir. 2019) ("Failure of an appellant to properly argue or present issues in an appellate brief renders those issues abandoned." (quoting *United States v. Beaumont*, 972 F.2d 553, 563 (5th Cir. 1992) (per curiam))).

[10] *See* FED. R. CIV. P. 8(c) (requiring that, "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . statute of limitations").

[11] *See Davis v. Huskipower Outdoor Equip. Corp.*, 936 F.2d 193, 198 (5th Cir. 1991); *see also Yohey*, 985 F.2d at 225 ("As a general rule, this Court does not review issues raised for the first time on appeal.").

[12] *See Monteon-Camargo v. Barr*, 918 F.3d 423, 428 (5th Cir. 2019); *Gentry*, 941 F.3d at 791 (holding that a party abandoned an issue he failed to properly brief on appeal).

[13] *See Texas v. Travis County*, 910 F.3d 809, 811 (5th Cir. 2018) ("We may affirm 'on any ground supported by the record, including one not reached by the district court.'" (quoting *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012))).

failed to exhaust her administrative remedies before the SBA; (3) Mrs. Oldham's declaratory judgment action neither waived the SBA's sovereign immunity nor independently conferred jurisdiction on the court; and (4) Mrs. Oldham failed to state a plausible claim for relief on any of the theories supporting her declaratory judgment action. We address each argument in turn.

## A

The first argument in the SBA's motion to dismiss was that the district court lacked subject matter jurisdiction because Mrs. Oldham sued the SBA rather than the SBA's Administrator. Under 15 U.S.C. § 634(b)(1), the SBA's Administrator can "sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court."[14] This statute "waives sovereign immunity . . . and confers jurisdiction on United States district courts to hear such suits."[15]

In this case, Mrs. Oldham named the Administrator in the caption of her amended complaint, she included the Administrator as a party to receive service of summons, and she served the amended complaint to counsel for the SBA via the court's electronic filing system. Mrs. Oldham also included several sentences in the opening of her amended complaint discussing the Administrator and explaining how the Administrator could be served. Thus, the SBA's arguments that Mrs. Oldham failed to sue the Administrator are not persuasive. The district court erred to the extent it relied on such reasoning.

_____

[14] 15 U.S.C. § 634(b)(1).

[15] *Expedient Servs., Inc. v. Weaver*, 614 F.2d 56, 57 (5th Cir. 1980) (first citing *Romeo v. United States*, 462 F.2d 1036 (5th Cir. 1972); and then citing *Mar v. Kleppe*, 520 F.2d 867 (10th Cir. 1975)).

No. 19-10644

On appeal, however, the SBA has slightly altered its argument. The SBA appears to concede that Mrs. Oldham's amended complaint named and discussed the Administrator. The SBA now argues that Mrs. Oldham failed to effectuate service on the Administrator and that the Administrator's name was never added to the docket. However, because the SBA did not raise this challenge to service in its Rule 12 motion to dismiss in the district court, the argument is forfeited.[16]

**B**

The second argument in the SBA's motion to dismiss was that Mrs. Oldham failed to exhaust her administrative remedies before suing the SBA, and, therefore, she failed to state a valid claim for relief. In the district court, the SBA argued that Mrs. Oldham was required to request a hearing in order to exhaust her administrative remedies. However, the SBA abandoned this argument in their brief on appeal.[17] The SBA now argues that Mrs. Oldham raised new arguments in court that she did not present in her administrative proceedings. According to the SBA, Mrs. Oldham's failure to raise these arguments at the agency level is a failure to exhaust. But the SBA did not raise this argument in the district court. Therefore, the SBA's exhaustion

---

[16] *See* FED. R. CIV. P. 12 (g)-(h); *see also Kersh v. Derozier*, 851 F.2d 1509, 1511 (5th Cir. 1988) ("Under Rule 12(h)(1)(B), the defense of insufficient service of process is waived unless made in a party's first responsive pleading or an amendment to a first responsive pleading allowed as a matter of course."); *Golden v. Cox Furniture Mfg. Co.,* 683 F.2d 115, 118 (5th Cir. 1982).

[17] *See Monteon-Camargo*, 918 F.3d at 428 ("Generally speaking, a [party] waives an issue if he fails to adequately brief it." (alteration in original) (quoting *United States v. Martinez*, 263 F.3d 436, 438 (5th Cir. 2001))); *Gentry*, 941 F.3d at 791 ("Failure of an appellant to properly argue or present issues in an appellate brief renders those issues abandoned." (quoting *United States v. Beaumont*, 972 F.2d 553, 563 (5th Cir. 1992))).

argument is forfeited.[18]

## C

The SBA next argued that Mrs. Oldham's declaratory judgment action should be dismissed pursuant to Rule 12(b)(1) because the Federal Declaratory Judgment Act (FDJA) "does not operate in and of itself to waive sovereign immunity or to confer jurisdiction on the federal courts." Although the FDJA requires some independent basis for subject matter jurisdiction, including waiving or abrogating an otherwise applicable sovereign immunity jurisdictional bar,[19] the "sue and be sued" clause in 15 U.S.C. § 634(b)(1) serves as such an independent basis.[20] For this reason, the SBA's third argument does not persuade.

## D

The SBA's final argument in its motion to dismiss was that Mrs. Oldham failed to state a plausible claim for relief on any of the theories supporting her declaratory judgment action. The relevant theories include: (1) illegality; (2) fraudulent inducement; (3) mutual mistake of fact; and (4) novation. We address each in turn. First, however, in briefing, the SBA argues that the theories supporting Mrs. Oldham's declaratory judgment action were invalidly raised in an "affirmative" rather than a "defensive"

---

[18] *See Grogan v. Kumar*, 873 F.3d 273, 279 n.3 (5th Cir. 2017).

[19] *See, e.g., Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950); *Jones v. Alexander*, 609 F.2d 778, 780-81 (5th Cir. 1980); *Com. Metals Co. v. Balfour, Guthrie, & Co.*, 577 F.2d 264, 268 (5th Cir. 1978).

[20] *See* 15 U.S.C.A. § 634(b)(1); *Expedient Servs., Inc.*, 614 F.2d at 57 ("[T]he court did have jurisdiction under [15 U.S.C. § 634(b)(1)], which waives sovereign immunity by allowing the Administrator of the Small Business Administration to sue or be sued and confers jurisdiction on United States district courts to hear such suits." (first citing *Romeo v. United States*, 462 F.2d 1036; and then citing *Mar v. Kleppe*, 520 F.2d 867)).

posture. To support this argument, the SBA points to the fact that Mrs. Oldham failed to provide a single case where the theories supporting her declaratory judgment were raised in an "affirmative" posture as part of declaratory judgment action.

The SBA's argument here is not entirely clear, though it seems to argue that Mrs. Oldham cannot assert contract defenses offensively as the basis of her claim in a declaratory judgment action. To the extent this is the SBA's argument, it is not persuasive. If a court could not consider defenses brought in an "affirmative" posture, then the judgment of that court could differ based on who brought an action over the exact same dispute. Unsurprisingly, several courts have allowed plaintiffs to raise contract defenses offensively as part of a declaratory judgment action.[21] Moreover, the SBA has cited no authority to the contrary. Without more, the fact that Mrs. Oldham raises contract defenses in an affirmative posture does not support dismissal.

## 1

The first theory that Mrs. Oldham offers in support of her declaratory judgment action is illegality. Under Texas law, illegality is an affirmative

---

[21] *See In re Checking Account Overdraft Litig.*, 883 F. Supp. 2d 1251, 1255 (S.D. Fla. 2012) (permitting plaintiff to assert affirmative claim for declaratory judgment based on unconscionability contract defense); *Ross v. Wells Fargo*, No. 3:08-1452, 2009 WL 357921, at *2 (S.D. W.Va. Feb. 12, 2009) (noting that "that the defense of unconscionability of a contract can be raised affirmatively in a declaratory judgment action"); *Eva v. Midwest Nat'l Mortg. Bank, Inc.*, 143 F. Supp. 2d 862, 895-96 (N.D. Ohio 2001) ("As a general proposition, most matters of defense can be raised affirmatively in a declaratory judgment action, so long as there is an actual controversy between the parties."); *see also Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937) ("[T]he operation of the Declaratory Judgment Act is procedural only.").

defense that voids the underlying contract.[22]  A contract that is illegal on its face will not be enforced.[23]  Mrs. Oldham argues that her personal guaranty is illegal, and therefore void, because the 2006 version of 13 C.F.R. § 120.160 and the SOP prohibited the Bank from requiring a personal guaranty from her.  The SBA argues that the regulations and the SOP give the loan officer discretion in deciding whether to require a personal guaranty from an individual with less than five percent ownership.  We conclude that the regulation, along with the SOP guidance, does give a lender some discretion to require a personal guaranty from individuals with less than five percent ownership under certain circumstances.  However, because Mrs. Oldham's situation does not fit into any of the circumstances envisioned in the regulation or the SOP, we conclude that requiring a personal guaranty from Mrs. Oldham was beyond that discretion and thus improper.

The 2006 version of 13 C.F.R. § 120.160 provides a starting point for the analysis.  It states in relevant part:

> The following requirements are *normally* required by SBA for all business loans: . . .
>
> Personal guarantees.   Holders of at least a 20 percent ownership interest generally must guarantee the loan.  SBA, in its discretion, consulting with the Participating Lender, may require other appropriate individuals to guarantee the loan as

---

[22] *See Denson v. Dallas Cnty. Credit Union*, 262 S.W.3d 846, 852 (Tex. App.—Dallas 2008, no pet.) ("A contract to do a thing which cannot be performed without violation of the law violates public policy and is void." (citing *Villanueva v. Gonzalez*, 123 S.W.3d 461, 464 (Tex. App.—San Antonio 2003, no pet.))); *Signal Peak Enters. of Tex., Inc. v. Bettina Inv., Inc.*, 138 S.W.3d 915, 920-21 (Tex. App.—Dallas 2004, pet. struck).

[23] *Signal Peak*, 138 S.W.3d at 920-21; *see also Denson*, 262 S.W.3d at 852.

well, except SBA will not require personal guarantees from those owning less than 5% ownership.[24]

SOP 50-10(4)(e) articulates the policy associated with the regulation. It provides an example of when it may be appropriate to require a guaranty from an individual regardless of ownership. Specifically, the SOP states that "when a key management person would be vital to repayment ability, [the lender] may require a guaranty, either limited or total, regardless of stock ownership."[25] However, such a guaranty is only appropriate "in exceptional circumstances[,] such as when the guarant[y] of the owners is weak and repayment ability is particularly dependent upon the key management person."[26]

After this example, the SOP outlines several additional "Guaranty Considerations."[27] These considerations include specific guidance regarding when the "guaranty of the owner(s)/principal(s) is weak."[28] In such a situation, the SOP states that the SBA "may require a guaranty from someone else."[29] This additional person "may be the spouse if the spouse volunteers."[30] But neither a lender nor the SBA may "specifically require a non-owner spouse to be an obligor, co-obligor[,] or guarantor except where

---

[24] 13 C.F.R. § 120.160 (2006) (emphasis added).

[25] SMALL BUS. ADMIN., SOP 50-10(4), at 99, *available at* https://www.sba.gov/sites/default/files/files/serv_sops_50104e_1_3.pdf.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

state law allows or requires this to perfect a lien where spousal interest is involved." [31]

Contrary to Mrs. Oldham's assertions, the language in the regulation and the guidance in the SOP do provide a lender with some discretion to require a personal guaranty from an individual with less than five percent ownership. Indeed, the regulation begins with the qualification that its "requirements are *normally* required by SBA for all business loans." [32] In other words, the requirements generally hold true; however, they are not absolutes. The example in the SOP makes this point clear. The example explains that the SBA may require a personal guaranty from a manager or officer of a business—regardless of stock ownership—when "the guarant[y] of the owners is weak and repayment ability is particularly dependent" upon that person. [33] Moreover, the example specifically states that the SBA may require a guaranty from a spouse "[w]here legal and appropriate." [34] Given this guidance, the five percent prohibition in the 2006 version of the regulation cannot be considered an absolute bar as Mrs. Oldham contends.

Although the regulation and the SOP do provide some discretion, the discretion is not as great as the SBA contends. The example in the SOP explains that a lender can require a personal guaranty from a nonowner manager or officer only when the nonowner is "vital" to repayment ability or when repayment ability is "particularly dependent" on the nonowner. [35] At the time the Bank told Mrs. Oldham that the SBA required her personal

---

[31] *Id.*

[32] 13 C.F.R. § 120.160 (2006) (emphasis added).

[33] Small Bus. Admin., *supra* note 25, at 99.

[34] *Id.*

[35] *Id.*

guaranty, Mrs. Oldham did not fit either description. Mrs. Oldham's husband was the president of the company, and he held the majority ownership interest. Mrs. Oldham had no ownership interest. Although the record indicates that Mr. Oldham's guaranty was possibly weak, nothing in the record indicates that obtaining Mrs. Oldham's personal guaranty was "vital" to repayment or that repayment ability was "particularly dependent" on her. Indeed, at the time of the loan signing, Mrs. Oldham was "unemployed, with no income or liquid assets." Repayment could not have been "particularly dependent" on obtaining Mrs. Oldham's personal guaranty, and she was not "vital" to repayment ability.

The SOP also places limitations on lenders requiring personal guaranties from nonowner spouses. According to the SOP, the spouse must volunteer to guarantee the loan personally.[36] If the spouse does not volunteer, then the lender may only require a guaranty when "state law allows or requires [a personal guaranty] to perfect a lien where spousal interest is involved."[37] Again, Mrs. Oldham does not fit the description.[38] She did not volunteer to act as a personal guarantor. Nor is there anything in the record that suggests requiring Mrs. Oldham's personal guaranty was permissible under state law or necessary to perfect a lien on a spousal interest. Therefore, the Bank could not have required Mrs. Oldham's personal guaranty in her capacity as Mr. Oldham's spouse.

In sum, the regulation and the guidance in the SOP do give a lender some discretion to require a nonowner spouse to personally guarantee a loan. But that discretion only extends to certain circumstances; none of which are

---

[36] *Id.*

[37] *Id.*

[38] *See id.*

present here.  For this reason, we conclude that requiring Mrs. Oldham's personal guaranty was improper.  The district court erred in concluding otherwise.

**2**

The second theory that Mrs. Oldham contends supports her declaratory judgment action is fraudulent inducement.  To establish fraudulent inducement as an affirmative defense to the enforcement of a contract, a party must establish the elements of fraud "as they relate to an agreement between the parties."[39]  The elements of fraud require a party to show (1) "the defendant made a material representation that was false"; (2) "the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth"; (3) "the defendant intended to induce the plaintiff to act upon the representation"; and (4) "the plaintiff actually and justifiably relied upon the representation and suffered injury as a result."[40]

In this case, Mrs. Oldham argued that the Bank made the false representation that the SBA required her personal guaranty when, in fact, it was illegal.  The district court rejected Mrs. Oldham's argument.  Instead, it accepted the Bank's argument that the guaranty was not illegal, but rather a valid exercise of the Bank's discretion under the relevant regulations.  Having determined that the personal guaranty was not illegal, the district court did not have occasion to consider Mrs. Oldham's fraudulent inducement claim against the SBA.  Because we conclude that Mrs. Oldham's personal

---

[39] *See McLernon v. Dynegy, Inc.*, 347 S.W.3d 315, 328 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (quoting *Haase v. Glazner*, 62 S.W.3d 795, 798-99 (Tex. 2001)).

[40] *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (internal quotation marks omitted) (quoting *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

guaranty was improper, we vacate the district court's dismissal of Mrs. Oldham's fraudulent inducement claim and remand for reconsideration.

**3**

In addition to illegality and fraudulent inducement, Mrs. Oldham argues that a mutual mistake of fact bars enforcement of her personal guaranty. Under Texas law, the mutual mistake of fact defense has three elements: (1) "a mistake of fact"; (2) "held mutually by the parties"; (3) "which materially affects the agreed-upon exchange."[41] "Mutual mistake . . . requires evidence showing both parties were acting under the same misunderstanding regarding the same material fact."[42]

Here, there is no disconnect between the parties' intention and the written agreement. The Bank and Mrs. Oldham intended to enter into a personal guaranty agreement to enable her husband's company to obtain SBA-backed financing. Mrs. Oldham's written personal guaranty agreement reflects that intention. The only mistake between the parties was whether the personal guaranty was required by law rather than discretionary. But that does not mean the agreement does not accurately reflect their intentions; rather, it means that the reasons for their intentions were misinformed. Accordingly, Mrs. Oldham cannot succeed on her mutual mistake of fact defense. The district court did not err in dismissing this claim.

---

[41] *Trahan v. Mettlen*, 428 S.W.3d 905, 908 (Tex. App.—Texarkana 2014, no pet.) (quoting *City of the Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 735 (Tex. App.—Fort Worth 2008, pet. dism'd)).

[42] *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 779 (Tex. 2017); *see also N.Y. Party Shuttle, LLC v. Bilello*, 414 S.W.3d 206, 212 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *Smith-Gilbard v. Perry*, 332 S.W.3d 709, 713 (Tex. App.—Dallas 2011, no pet.).

No. 19-10644

**4**

The final theory Mrs. Oldham alleges supports her declaratory judgment action is novation. To establish a novation, a party must prove: "(1) . . . a previous, valid obligation; (2) a mutual agreement of the parties to a new contract; (3) the extinguishment of the old contract; and (4) the validity of the new contract."[43] Novation can occur when a new contract is "so inconsistent with a former agreement that the two cannot subsist together."[44] "In the absence of inconsistent provisions, 'a second contract will operate as a novation of a first contract only when the parties to both contracts intend and agree that the obligations of the second shall be substituted for and operate as a discharge of the obligations of the first.'"[45] Thus, "[w]hether a subsequent agreement operates as a novation of the first is a question of intent."[46] "It must clearly appear that the parties intended a novation, and novation is never presumed."[47]

According to Mrs. Oldham, the restructuring agreement in 2010

---

[43] *Donley v. Payne*, 2018 WL 3384561, at *5 n.4 (Tex. App.—Houston [1st Dist.] July 12, 2018, no pet.) (citing *N.Y. Party Shuttle, LLC*, 414 S.W.3d at 214).

[44] *In re B.N.L.-B.*, 523 S.W.3d 254, 264 (Tex. App.—Dallas 2017, no pet.) (citing *Fulcrum Cent. v. AutoTester, Inc.*, 102 S.W.3d 274, 277 (Tex. App.—Dallas 2003, no pet.)); *see also JMW Partners, L.P. v. Northstar Bank of Tex.*, No. 2-09-167-CV, 2010 WL 2331399, at *5-6 (Tex. App.—Fort Worth June 10, 2010, no pet.).

[45] *Fulcrum Cent.*, 102 S.W.3d at 277 (quoting *Chastain v. Cooper & Reed*, 257 S.W.2d 422, 424 (Tex. 1953)).

[46] *In re Bath Junkie Franchise, Inc.*, 246 S.W.3d 356, 365 (Tex. App.—Beaumont 2008, orig. proceeding) (citing *Allstate Ins. Co. v. Clarke*, 471 S.W.2d 901, 907 (Tex. App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.)); *see also White v. Harrison*, 390 S.W.3d 666, 679 (Tex. App.—Dallas 2012, no pet.) ("When construing a written contract such as [a] [g]uaranty, our primary concern is to ascertain the true intentions of the parties." (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)).

[47] *Fulcrum Cent.*, 102 S.W.3d at 278 (citing *Allstate*, 471 S.W.2d at 907).

extinguished all prior debts, including her personal guaranty. However, Mrs. Oldham has not alleged that the Bank or the SBA intended or agreed to release her from the guaranty or to substitute a different party in her place. Mrs. Oldham has also not pointed to any inconsistencies or contradictions between the personal guaranty and the subsequent restructuring agreement. Moreover, the terms of Mrs. Oldham's personal guaranty indicate that the guaranty was intended to endure despite any potential future restructuring of the underlying debt, and nothing in the restructuring agreement appears so unreasonable or unforeseeable so as to render that clause inapplicable here. Thus, without additional allegations from Mrs. Oldham concerning an agreement among the parties, Mrs. Oldham's novation claim cannot meet the Rule 12(b) plausibility threshold.[48] The district court did not err in dismissing this claim.

\* \* \*

For these reasons, we REVERSE the district court's dismissal of Mrs. Oldham's declaratory judgment action against the SBA on illegality; we VACATE the district court's dismissal of Mrs. Oldham's declaratory judgment action against the SBA on fraudulent inducement; we AFFIRM the district court's dismissal of Mrs. Oldham's declaratory judgment action against the Bank, its dismissal of her monetary damage claims against the Bank, and its dismissal of the remaining declaratory judgment claims against the SBA; and we REMAND this case to the district court for further proceedings consistent with this opinion.

---

[48] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).